**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**JULY 1997 SESSION**

FILED

July 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | NO. ~~02C01-9612-CR-00460~~ |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CHRIS CRAFT, JUDGE** |
| **TOMMY L. POINDEXTER,** | ) | |
| | ) | (Conspiracy to Commit |
| Appellant. | ) | First Degree Murder) |

<u>FOR THE APPELLANT</u>:

**DANIEL A. SEWARD**
707 Adams Avenue
P.O. Box 11207
Memphis, TN 38111-0207

<u>FOR THE APPELLEE</u>:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**DEBORAH A. TULLIS**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243

**WILLIAM L. GIBBONS**
District Attorney General

**JERRY R. KITCHEN**
Assistant District Attorney General
Criminal Justice Center, 3rd Floor
201 Poplar Avenue
Memphis, TN 38103

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

The defendant, Tommy L. Poindexter,[1] was convicted by a Shelby County jury of conspiracy to commit first degree murder and criminally negligent homicide. He was sentenced to consecutive sentences of twenty-four (24) years for the offense of conspiracy to commit first degree murder and three (3) years for the offense of criminally negligent homicide. On appeal, he challenges the sufficiency of the convicting evidence for conspiracy to commit first degree murder. He further argues that the sentence of twenty-four (24) years is excessive, and the trial court erred in imposing consecutive sentences. He does not appeal his conviction or sentence for criminally negligent homicide. We affirm the judgment of the trial court.

**FACTS**

In the early morning hours of September 17, 1994, Mashaun Harris, Keith Thomas, Derrick Dante, Terry Poindexter and defendant were outside of Rob's Lounge in downtown Memphis. As Marcus Brown was standing next to his car, Harris approached him and stole his necklace. As Harris was attempting to get in a car, Brown shot Harris in the back. Defendant and the others drove Harris to the Regional Medical Center (the Med) in Memphis.

Grady Harrison, a security officer at the Med, noticed two males bringing Harris into the hospital. Harrison overheard one of the males telling the other one, "let's go get these bitches." The two males subsequently left the hospital.

Later that evening, the defendant, his brother Terry, Xavier Bennett, Frederick Stepton, Kevin Porterfield, Eldrick Stephans, Harry Dillard, Warrick McBride, and Michael Thaddius armed themselves with various types of weapons and headed for the Ridgecrest Apartments in order to "get" the person who shot

---

[1] The indictment and all other court documents list "Tommy;" however, we note that defendant signs his name "Tommie."

2

Harris, i.e., Brown. Although Brown did not live at the Ridgecrest Apartments, he had been there earlier that afternoon with his roommate.

Defendant, Stephans, McBride, Thaddius and Dillard traveled to the Ridgecrest Apartments in a car. All five men were dressed in dark clothing and were armed. Defendant was carrying an AK-47 assault weapon. They approached Prentiss Walton and Eric Isom, who were standing outside by Isom's car. The five men began shooting at Walton and Isom. Melba Frost, a resident at the Ridgecrest Apartments, overheard some of the men saying things such as, "I got him" and "let's get him" during the shooting.

At approximately the same time, Alonzo Wallace was returning to his home at the Ridgecrest Apartments. He stopped his car and attempted to avoid the gunfire. When the shooting subsided for a moment, Wallace backed his car into a parking spot. Someone began to shoot at his car. Wallace was wounded, got out of his car, ran to his apartment and collapsed by his mailbox.

Bennett, Stepton, Porterfield and Terry Poindexter drove in a separate car to the apartment complex. By the time they reached the complex, they could already hear shots being fired. Bennett, Stepton and Porterfield got out of their car and fired their weapons at some people standing on a second floor balcony.

Subsequently, defendant visited Harris in the hospital. During his conversation with Harris, defendant said, "[w]e got them. We sprayed them bitches." After Harris was released from the hospital, defendant told him that he killed those "folks" at the Ridgecrest Apartments and that he was shooting an AK-47.

Wallace died as a result of a gunshot wound to the chest. The bullet recovered from his body was consistent with that being fired from an AK-47.

Defendant was indicted along with others for the conspiracy to commit a felony, to wit: murder in the first degree of Marcus Brown. He was also indicted for the first degree murder of Alonzo Wallace. The jury convicted him of conspiracy to commit first degree murder of Brown and criminally negligent homicide of Wallace. He was sentenced as a Range I, Standard Offender to twenty-four (24) years for the

3

conspiracy charge. That sentence was ordered to run consecutively to a sentence of three (3) years for criminally negligent homicide. From the conviction and sentence for conspiracy, defendant brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

Defendant asserts that the evidence is insufficient to support a finding of guilt of conspiracy to commit murder in the first degree. He claims that there is no evidence in the record to suggest that he went to the Ridgecrest Apartments to kill Brown. He further argues that the jury's finding of guilt of conspiracy is inconsistent with the finding that he was guilty of the criminally negligent homicide of Wallace. Therefore, he maintains that the verdict is contrary to the law and the evidence.

### A.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Id. In State v. Grace, the Tennessee

4

Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

## B.

A defendant commits the crime of conspiracy if:

(a) . . . two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

. . .

(d) No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired.

Tenn. Code Ann. § 39-12-103. At the time of the homicide, first degree murder was defined as the "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1)(1991).

## C.

In the case *sub judice*, we find that there is sufficient evidence in the record to support a finding that defendant conspired to kill Marcus Brown. After defendant's friend Harris was shot, a security guard heard two of Harris' companions say, "let's go get these bitches." Later that evening, defendant and eight (8) others armed themselves with weapons to find Brown. Their plan was to "get" the guy who shot Harris. Defendant subsequently admitted to Harris that they had "sprayed them bitches." He admitted to killing the "folks" at the Ridgecrest Apartments and that he was carrying an AK-47. Although his co-conspirators testified that they did not intend to kill Brown, the jury could logically infer that they intended to kill Brown due to their stated intentions and violent conduct. Further, the

5

defendant and the co-conspirators committed overt acts in furtherance of the conspiracy.

Although the verdicts are not necessarily inconsistent, any seeming inconsistency is irrelevant. There is no requirement of consistency in a jury verdict. Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973); State v. Gennoe, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992); State v. Hicks, 835 S.W.2d 32, 36 (Tenn. Crim. App. 1992). This issue has no merit.

## SENTENCING

In his final assignment of error, defendant claims that the trial court imposed an excessive sentence for the conspiracy charge. He further argues that the trial court improperly imposed consecutive sentences. However, the transcript of the sentencing hearing is absent from the record. It is the appellant's duty to have prepared an adequate record in order to allow a meaningful review on appeal. Tenn. R. App. P. 24; State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Carey, 914 S.W.2d 93, 97 (Tenn. Crim. App. 1995); State v. Goodwin, 909 S.W.2d 35, 43 (Tenn. Crim. App. 1995); State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). When no evidence is preserved in the record for review, we are precluded from considering the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

Moreover, this issue is waived since the defendant has failed to make appropriate references to the record. Tenn. Crim. App. Rule 10(b); State v. Turner, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995); State v. Hill, 875 S.W.2d 278, 283-84 (Tenn. Crim. App. 1993); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988); *see also* Tenn. R. App. P. 27(a)(7) and (g). This issue is without merit.

## CONCLUSION

We find that there is sufficient evidence for a rational trier of fact to conclude that defendant is guilty of conspiracy to commit first degree murder. Furthermore, any issue regarding sentencing has been waived as the record does not contain a transcript of the sentencing hearing. Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOE B. JONES, PRESIDING JUDGE**

_____
**DAVID H. WELLES, JUDGE**